STATE, RESPONDENT, v. HOWELL, APPELLANT.

(No. 1,580. )

(Submitted October 2, 1901.  Decided October 21, 1901.)

*Criminal Law—Homicide — Appeal—Instructions—Presumption of Innocence—Juror's Individual Duty.*

1. Disputed questions of fact and the credibility of witnesses will not be considered on appeal.
2. Refusal to submit special instructions, correctly stating the law, is not erroneous, where the charge given clearly and correctly states the phase of the law embodied in the special request.
3. The defendant in a crimial case is always entitled to have the jury take into consideration the presumption of innocence which the law throws about him; it is therefore the duty of the court to submit proper instructions upon this subject as a substantive part of the law.
3. The refusal of the court in a criminal case to charge that each juror should act upon his own judgment, and should not surrender his own conviction, unless convinced, and that while he should discuss the evidence, and be open to conviction by argument, he should not surrender his convictions merely because the majority were against him, was not error. (MR. JUSTICE MILBURN dissenting.)

*Appeal from District Court, Fergus County; Dudley Du Bose, Judge.*

MILTON OLIVER HOWELL was convicted of murder, and he appeals.  Affirmed.

*Messrs. Cort & Worden,* for Appellant.

*Mr. James Donovan, Attorney General,* for the State.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The defendant, M. O. Howell, was convicted of murder of the first degree, and condemned to death.  Thereafter he moved for a new trial upon the grounds that the verdict was contrary to the evidence; that the defendant was prejudiced by certain rulings of the court upon the admission and exclusion of evi-

dence; and that the court omitted to instruct the jury upon
matters of law which arose in the case and were material to the
defense. The defendant has appealed to this court from an
order denying him a new trial, and submits the question
whether the action of the court upon the first and second
grounds of the motion was correct.

1. We shall not undertake to state and analyze the evidence
submitted at the trial. We have examined it carefully, however,
and find that defendant's contention that the verdict is con-
trary to the evidence cannot be sustained. While we find a sub-
stantial conflict in the statements of some of the witnesses, par-
ticularly as between those of the defendant himself and of
certain of those introduced by the state, touching the circum-
stances of the homicide, the credibility and weight to be given
to these conflicting statements was a question exclusively within
the province of the jury, and we have no power to disturb their
finding thereon. "This court cannot try the case *de novo,* and
thus invade the province of the trial court, by passing upon dis-
puted questions of fact and the credibility of witnesses." (*State
v. Hurst,* 23 Mont. 484, 59 Pac. 911; *State* v. *Allen,* 23 Mont.
118, 57 Pac. 725.)

2. Counsel for defendant prepared and requested the court
to submit to the jury two special instructions embodying the
principle that in a criminal case the defendant is presumed to
be innocent until he is proven guilty, and that this presumption
can be rebutted and overturned only by evidence establishing
every element of the crime charged against him beyond a rea-
sonable doubt. The court refused to submit these instructions
on the ground that they were embodied, in substance, in the
general charge given to the jury. Special instructions were
also requested, in substance, that each juror should act upon
his own judgment; that he should not surrender his deliberate,
conscientious convictions, unless he was convinced; and that,
while he should discuss the evidence with his fellows in a spirit
of fairness, being open to conviction by reasonable argument
upon consideration of all the evidence, under the law given by

the court, he should not surrender his convictions merely be-. cause a majority were against him, in order to prevent a mistrial. These instructions were also refused. Counsel contends that the court was in error in both instances.

. The defendant in a criminal case is always entitled to have the jury take into consideration the presumption of innocence which the law throws about him. It is therefore the duty of the court to submit proper instructions upon this subject as a substantive part of the law. This presumption comes to the aid of the defendant at every stage of the case, and is finally rebutted and overturned only by evidence establishing every element of the crime charged to the satisfaction of the jury beyond a reasonable doubt. It does not therefore follow, however, that the trial court commits error in refusing to submit special instructions requested by the defendant, even though they were correct, provided the charge given fairly and clearly states the law applicable to the case, including the phases of it embodied in the special request.

The defendant in this case sought to justify the homicide on the ground of self-defense. The charge given by the court, though very brief, was sufficient to meet every requirement. It clearly defined and distinguished murder of the first and second degrees and manslaughter, calling special attention to the various elements necessary to constitute each offense. It also gave the statutory definition of justifiable homicide, with a clear statement of the law of self-defense. The jury were then told that they must determine from the whole of the evidence whether the alleged homicide was murder of the first or second degree or manslaughter, or was justifiable on the ground of self-defense, and that they could not find the defendant guilty of any offense until they were convinced of his guilt beyond a reasonable doubt upon the whole of the evidence. They were further instructed upon the law of reasonable doubt, and in this connection were told that the defendant was presumed to be innocent until proven guilty beyond a reasonable doubt; that the burden was upon the state to establish beyond a reasonable

doubt every element of the crime charged; that if they found
the defendant guilty of murder, or of manslaughter, in fixing
the degree of his guilt they must give him the benefit of all
reasonable doubt as between the greater or lesser offense, and
find him guilty of the lesser; and they must acquit him entirely
if from the whole of the evidence they had any reasonable doubt
as to whether the killing was justifiable homicide.   The court,
having already correctly instructed the jury upon the subject
of the special requests, was not required to repeat instructions
already given, merely because they were put in the form of
separate paragraphs and specially requested.   (*State* v. *Bowser,*
21 Mont. 133, 53 Pac. 179.)

Nor was it error to refuse the instruction touching the duty
of the individual jurors, although they embodied a correct state-
ment of the law.   The propriety of giving such an instruction
was considered in *State* v. *Hurst, supra*.   We adhere to the
doctrine stated in that case.   Of course, each juror must act
upon his own convictions.   He must not surrender them merely
because others of the jury have reached a different conclusion
upon the evidence, though he may be aided by his fellow jurors
in arriving at the truth.   If in this particular case the court
was in error in refusing to submit the instruction requested, it
must necessarily follow that a court should instruct the jury
as to their individual duties in all cases when requested, or else
we must conclude that it was error in the court to refuse to
submit the instruction requested in this case merely because
counsel for defendant was of the opinion that the jury required
it.   As was said in *State* v. *Hamilton,* 57 Iowa, 596, 11 N. W.
5:   "A jury need not be advised of so simple a proposition.
The usual method of instructing upon the measure of proof
required in criminal cases is sufficient."   Furthermore, each
juror was sworn at the beginning of the trial to well and truly
try the issue, and a true verdict render according to the evi-
dence.

The order of the district court denying a, new trial was correct, and must be affirmed.

*Affirmed.*

MR. JUSTICE PIGOTT: I concur.

MR. JUSTICE MILBURN: I dissent. I am not satisfied with the views expressed in the opinion of the Chief Justice as to the refused instruction upon the individual duty of each juror in respect of the matter of reasonable doubt. I do not consider the *Hurst Case* (23 Mont. 484, 59 Pac. 911), as conclusive, nor the *Hamilton Case* (57 Iowa, 596, 11 N. W. 5), cited with approval in the *Hurst Case*, as well considered, or supported at all by the sole authority to which it refers as deciding an alleged similar case. (*State* v. *Rorabacker,* 19 Iowa, 154.) The latter case was one in which the refused instruction in effect declared that, one juror having a reasonable doubt, the twelve should acquit; whereas, the instruction in 57 Iowa, 11. N. W., was somewhat similar to that in the *Hurst Case.* In the *Hurst Case* the instruction asked for is far from being the same as the following, which is one of those asked for and refused in the case at bar, to-wit: "You are instructed that your verdict must be unanimous, and that each juror should decide for himself upon his oath from the law as given to you by the court and the evidence in the case, as to what his verdict should be. No juror should yield his deliberate, conscientious convictions as to the guilt or innocence of the defendant, either at the instance of the majority of the jury for the sake of unanimity, or to prevent a mistrial, but you are further instructed that nothing in this instruction is to be taken to mean that you shall not fully and fairly discuss among yourselves all the evidence and facts surrounding the case, as disclosed by the evidence, or that any of your number shall not be open to conviction by fair, honest argument, by any member or members of the jury, founded upon the evidence produced on the trial and the law as given you by the court."

It is conceded by all that this instruction correctly states the

law, and was proper to be given whether asked or not; but was its refusal error? I think it was. There is not in any part of the charge to the jury any statement or reference to the separate duty and responsibility of each juror. The jury was instructed as a body. Nowhere, having been sworn to try the case upon the evidence, are they told that they shall take the law from the court and obey it, and nowhere are they told what the law is as to consulting with their fellows, or as to how to act upon their individual opinions, separately, after such consultation. It is a matter of common knowledge that many jurors surrender to others, and do it without being convinced to a moral certainty by the evidence under the law. Men who have a reasonable doubt as to guilt in any degree will often concur in a verdict if those who have no doubt of guilt in the highest degree will agree to a verdict in a lesser degree. Men thus and in other ways often surrender their views against conscience, and all judges know it. It is the duty of the juror to consult with his fellows and to consider the views of the other jurors, but, ultimately, in his own mind and of his own virtue, to determine what is his duty and to declare it, acting upon his own oath and his own judgment. This he should be told plainly if the defendant so pray. (*People* v. *Dole,* 122 Cal. 486, 55 Pac. 581, 68 Am. St. Rep. 50; *State* v. *Witt,* 34 Kan. 488, 8 Pac. 769; *Castle* v. *State,* 75 Ind. 146.)

It is known to all who have to do with them that jurors, for sake of unanimity, agree to compromise verdicts in criminal cases; and in Connecticut (*State* v. *Smith,* 49 Conn. 376), and in Massachusetts (*Commonwealth* v. *Tuey,* 8 Cush. 1), the courts thought it the duty of the jurors to consult and to mutually concede in their deliberations; and in the Massachusetts case, with the approval of the supreme court, it was emphatically urged to such an extent and in such language that, in my opinion, the average juror would be convinced that he would be excusable in thinking that he had no right to think his own thoughts if his views were opposed to those of eleven others, "equally honest and equally in-

telligent." To use such a whip suggests the necessity of a curb in the shape of an instruction to the effect appearing in the fair and correct prayer of the defendant refused in the case at bar. Is it not begging the question to assume that a juror's fellows are "equally honest and equally intelligent?"

I think the case should be reversed for error in refusing so correct an instruction, which, in my opinion, is needed in every criminal case.